RECEIVE

Screen For VRA

APR 18 200(

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

Department of Correc

AT  ANCHORAGE

FILED in the Trial Courts PSI Unit
State of Alaska, Third District

|  |  |  |  |
|---|---|---|---|
| STATE OF ALASKA | ) | | **APR 1 ̓ 2000** |
| | ) | | |
| Plaintiff, | ) | | Clerk of the Trial Courts |
| | ) | | ˜· _____ Deputy |
| vs. | ) | | |
| | ) | | |
| JEFFREY TURNER, | ) | CASE NO. _3AN-S99-9792_ CR |
| | ) | | |
| Defendant. | ) | JUDGMENT AND COMMITMENT |
| DOB: 04/15/66 | ) | | |

ID No. _6303553_  ATN _103 545 963_

Defendant has been convicted upon his plea of no contest and the court's finding of guilty of

| Count | Date of Offense | Offense | Statute Violated | DV Offense Per AS 18.66.990(3)&(5) (Yes or No) |
|---|---|---|---|---|
| I | 11/10/99 | Theft in the Second Degree | AS 11.46.13(a)(3) | no |
| II | 11/10/99 | Assault in the Fourth Degree | AS 11.41.230(a)(1) | no |

and the following charges were dismissed:

| Count | Date of Offense | Offense |
|---|---|---|

AS 12.55
Crim. R. 32-32.5

State vs.  JEFFREY TURNER                    Case No. 3AN-S99-9792 CR

Defendant came before the court on April 11, 2000, with counsel, Julia Moudy, Esq., and the District Attorney present.

IT IS ORDERED that the defendant is hereby committed to the care and custody of the Commissioner of the Department of Corrections for the following period(s):

Count I - Five (5) years of which three (3) years are presumptive flat time;

Count II - One (1) year concurrent to Count I.

This sentence is:
     X     all or partially presumptive.  The defendant is ineligible for parole, except as provided in AS 33.16.090(b) and (c).

     _     non-presumptive.  The defendant is eligible for parole.

IT IS ORDERED that the defendant is fined $__.

SURCHARGE.  IT IS ORDERED that defendant pay the following surcharge within 10 days:

| Count | Surcharge Amount |
|-------|------------------|
| I & II | $ 100.00 |

     Upon application, the court may allow a defendant who is unable to pay the surcharge required, perform community work service under AS 12.55.055(c) in lieu of the surcharge.

DNA IDENTIFICATION.  If this conviction is for a "crime against a person" as defined in AS 44.41.035(j), the defendant is ordered to provide samples for the DNA Registration System when requested to do so by a health care professional acting on behalf of the state.  AS 12.55.015(h).

IT IS RECOMMENDED

State vs. <u>JEFFREY TURNER</u>                    Case No. <u>3AN-S99-9792</u>  CR

IT IS FURTHER ORDERED that defendant

Any appearance bond in this case is:
<u>X</u>   exonerated.
___   exonerated when defendant reports to the jail to serve the sentence.
___   ___.

<u>April 11, 2000</u>                    _____
Effective Date                                        Judge
                                               Larry D. Card
                                               Type Judge's Name

## NOTICE TO DEFENDANT

<u>Sentence Appeal</u>.  If you are ordered to serve more than two years in jail, you may appeal the sentence to the court of appeals on the ground that it is excessive.  Your appeal must be filed within 30 days of the date of distribution stated below.  If you are sentenced to serve two years or less in jail, you may seek review of your sentence by filing a petition for review in the supreme court.  To do this, you must file a notice of intent to file a petition for sentence review within 10 days of the date of distribution stated below.  See Appellate Rules 215 and 403(h) for more information on time limits, procedures and possible consequences of seeking review of your sentence.

☐     REGISTRATION REQUIREMENT.  Because you have been convicted of one of the offenses listed in AS 12.63.100, you must register as described in the attached form (CR-471, Sex Offender and Child Kidnapper Registration Requirements).

I certify that on  <u>4-18-00</u>            I certify that on _____
a copy of this judgment was sent to:      a copy of this judgment was sent to:

✓  DA                                      ___  Jail          ___  Probation Officer
✓  Defense Atty. J. Maudy Esq.             ___  DOC           ___  DPS-Juneau
✓  DOC                                     ___  Data          ___  DPS-Fingerprint Sect.
                                           ___  Term.         ___  Defendant,
Sec./Clerk: T. Ulmer                       ___  Off. Loc.     ___  through _____
                                           ___  Exhibit Clerk

                                           Clerk:_____

                                                          000040
                                                          AS 12.55
                                                          Crim. R. 32-32.5

# IN THE DISTRICT COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA,                    )
                                    )
        Plaintiff,                  )
                                    )
    vs.                             )
                                    )      FILED IN OPEN COURT
JEFFERY L TURNER,                   )      Date: 1-24-00 R
DOB: 4/15/66                        )
APSIN ID: 6303553                   )
DMV NO. 6303553                     )
SSN: 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                    )
ATN: 103-545-963                    )
                                    )
        Defendant.                  )
_____)

No. 3AN-S99-9792  CR

## AMENDED  INFORMATION

I certify this document and its attachments do not contain the (1) name of a victim of a sexual offense listed in AS 12.61.140 or (2) residence or business address or telephone number of a victim of or witness to any offense unless it is an address identifying the place of a crime or an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

The following counts charge a crime involving DOMESTIC VIOLENCE as defined in AS 18.66.990.

### Count I
### AS 11.46.130(a)(3)
### Theft In The Second Degree

### Count II
### AS 11.41.230(a)(1)
### Assault In The Fourth Degree

## THE DISTRICT ATTORNEY CHARGES:

### Count I

That on or about November 10, 1999, at or near Anchorage, in the Third Judicial District, State of Alaska, JEFFERY L TURNER committed the crime of theft from the person of Rudy Trifunovic.

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

All of which is a class C felony offense being contrary to and in violation of AS 11.46.130(a)(3) and against the peace and dignity of the State of Alaska.

### Count II

That on or about November 10, 1999, at or near Anchorage in the Third Judicial District, State of Alaska, JEFFERY L TURNER recklessly caused physical injury to Rudy Trifunovic.

All of which is a class A misdemeanor offense being contrary to and in violation of AS 11.41.230(a)(1) and against the peace and dignity of the State of Alaska.

Dated at Anchorage, Alaska, this 24th day of January, 2000.

BRUCE M. BOTELHO
ATTORNEY GENERAL

By: _____
John J. Novak
Assistant District Attorney
Alaska Bar No. 8511184

...y certify that this is a true and ...
...opy of the original on file in my office.
ATTEST:
Clerk of the Trial Courts
By _____ Deputy
11-8-05

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

2

# IN THE DISTRICT COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA,                                )
                                                )        Filed in the Trial Courts
                  Plaintiff,                    )        State of Alaska Third District
                                                )
vs.                                             )        NOV 1 ; 1999
                                                )
JEFFERY L TURNER,                               )        Clerk of the Trial Courts
DOB: 4/15/66                                     )        By _____ Deputy
APSIN ID: 6303553                               )
DMV NO. 6303553                                 )
SSN: 574623635                                  )
ATN: 103545963                                  )
                                                )
                  Defendant.                    )
_____           )

COURT No. 3AN-S99-9792  CR.

## INFORMATION

I certify this document and its attachments do not contain the (1) name of a victim of a sexual offense listed in AS 12.61.140 or (2) residence or business address or telephone number of a victim of or witness to any offense unless it is an address identifying the place of a crime or an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

The following counts charge a crime involving DOMESTIC VIOLENCE as defined in AS 18.66.990:

Count I
ASSAULT IN THE FOURTH DEGREE
AS 11.41.230(a)(1)
Jeffery L Turner - 002

Count II
ROBBERY IN THE SECOND DEGREE
AS 11.41.510(a)(1)
Jeffery L Turner - 001

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

THE DISTRICT ATTORNEY CHARGES:

### Count I

That on or about the 10th day of November, 1999, at or near Anchorage in the Third Judicial District, State of Alaska, JEFFERY L TURNER, recklessly caused physical injury to another person.

All of which is a class A misdemeanor offense being contrary to and in violation of AS 11.41.230(a)(1) and against the peace and dignity of the State of Alaska.

### Count II

That on or about the 10th day of November, 1999, at or near Anchorage in the Third Judicial District, State of Alaska, JEFFERY L TURNER, in the course of taking or attempting to take property from the immediate presence and control of another, used or threatened the immediate use of force upon another with intent to prevent or overcome resistance to the taking of the property, retention of the property after the taking.

All of which is a class B felony offense being contrary to and in violation of AS 11.41.510(a)(1) and against the peace and dignity of the State of Alaska

The undersigned swears under oath this Information is based upon a review of police reports submitted to date.

Rudy Trifunovic told Anchorage police that, at about 1.00 p.m. on November 10, 1999, he was at the Bus Accommodation Center located at 700 West 6th Avenue in Anchorage. He said he was using the restroom when he was grabbed from behind. When he turned to object, he saw a black male who hit him in the face with his fist several times. The man then began feeling for his wallet. The man took Trifunovic's wallet, containing a little

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

over $20, one $10 bill, one $5 bill and six or seven $1 bills. He said he had followed the robber out of the restroom and flagged down a Bus Accommodation Center security guard. He told police that the robber wore a black jacket with a green sweater.

Police officers could see a scratch on Trifunovic's left hand and a bloody nose. His left cheekbone was bruised and swollen. The officers also found some blood on the exit doors of the Bus Accommodation Center.

When a security officer radioed for help from other BAC security officers, a "downtown ambassador" at the BAC, Daniel Royster, overheard the transmission and with another ambassador and a security officer followed the robber. The robber tried to get away from them. The robber went into the Hill Building and, when the ambassador entered, he left. He went east in the alley south of the Hill Building and north through a walkway to 6th Avenue. He tried to get into the Performing Arts Center on 6th Avenue; but when he could not, he walked north on G Street. He went west through the alley between 5th and 6th and south on H Street, where he entered the Inlet Inn. Royster and the other ambassador lost him in the hotel, but found him again at the corner of 5th Avenue and G Street. He went east through the alley between 4th and 5th and then north through the passage between the alley and 4th Avenue. The passage runs along the side of the Fourth Avenue Theater. Royster was at one end of the passage and the other ambassador was at the other end. As the man approached Royster at the 4th Avenue end of the passage, the man balled up his fists. Royster retreated across 4th Avenue and lost sight of the man as he retreated, but turned to see that the man was no longer on Fourth Avenue. Without time for the man to have gone anywhere else, he surmised that the man had gone into the Fourth Avenue Theater. The two ambassadors remained near the Fourth Avenue Theater until police arrived.

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

3

The ambassadors told Officers Hobson and Paiz that the suspect had entered the theater. The officers entered and found the defendant Turner seated in a stall in a restroom in the theater. He was wearing a black jacket with green lining. Officer Paiz asked Turner whether he knew what this was about and Turner nodded in the affirmative.

The victim Trifunovic was brought to the Fourth Avenue Theater for a showup and he positively identified Turner as the robber.

Officer Paiz then arrested and searched Turner. He found one $10 bill, one $5 bill and six $1 bills in an inside pocket of Turner's jacket

## BAIL INFORMATION

This defendant has the following criminal convictions.

| CONV COURT | CONV DATE | CONVICTING CHARGE | COURT DOCKET | POS ID | DISPOSITION | FEL | ATN |
|---|---|---|---|---|---|---|---|
| SAN | 12 03 96 | LARCENY | 96-4756 | N | NOLO CONTENDRE | Y | 100410183 |
| SAN | 12 03 96 | ASSAULT | 96-4756 | N | NOLO CONTENDRE | N | 100410183 |
| DAN | 01 12 95 | CONTEMPT OF COURT | 95-278 | Y | GUILTY | N | 100752912 |
| DAN | 10 24 94 | VIOLATE TERMS RO | 94-7846 | Y | NOLO CONTENDRE | N | 100572372 |
| DAN | 04 07 94 | ASSAULT | 94-591 | Y | NOLO CONTENDRE | N | 100234730 |
| DAN | 08 15 91 | LARCENY | 91-2704 | N | NOLO CONTENDRE | N | |
| SAN | 12 09 88 | ROBBERY | 88-1241 | Y | GUILTY | Y | |
| DAN | 09 14 87 | DRIV W O LICENSE | | | GUILTY | N | |

Dated at Anchorage, Alaska, this 11th day of November, 1999.

BRUCE M. BOTELHO
ATTORNEY GENERAL

SUSAN A. PARKES
DISTRICT ATTORNEY

By: Leonard M. Linton, Jr.
Assistant District Attorney
Alaska Bar No. 7605040

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

4

SUBSCRIBED AND SWORN to before me this 11th day of November, 1999 at

Anchorage, Alaska.

Notary Public in and for Alaska
My commission expires: 10-27-02

DISTRICT ATTORNEY, STATE OF ALASKA
310 K STREET, SUITE 520
ANCHORAGE, ALASKA 99501
(907) 269-6300

ATTEST:
Clerk of the Trial Court
By _____ Deputy

Judge: CARD          D,  LINTON          Def. Atty: E, _TER          PO: LUTH

## IN THE SUPERIOR COURT OF THE STATE OF ALASKA
### THIRD JUDICIAL DISTRICT

### UPDATED PRESENTENCE REPORT

THE STATE OF ALASKA           )          Case No.: 3AN-S99-97χ92CR   Hrg. Date: 4-11-00
    Plaintiff                        )

                     )
                   )          ┌────────────────────────────────────────┐
         vs                            )          │            **Confidential**            │
                   )          │ PRIVILEGED COMMUNICATION FOR SUPERIOR COURT │
                   )          │ NO DISTRIBUTION WITHOUT PRIOR AUTHORIZATION │
TURNER, Jeffery L.                )          │          OF SUPERIOR COURT             │
    Defendant                      )          └────────────────────────────────────────┘

LEGAL NAME: TURNER, Jeffery Lee

CHARGED WITH CRIME(S) OF: Assault in the Fourth Degree, Robbery in the Second Degree

CONVICTED OF CRIME(S) OF: Assault in the Fourth Degree, AS 11.41.230(a)(1), Theft in the Second Degree, AS 11.41.230(a)(1)

PRESUMPTIVE: Yes                   TERM: 0     (3)     5 yrs.

BY:     Guilty Plea:                 DAYS IN JAIL THIS CASE: 154 days as of 4-11-00

       Nolo Plea:  XX

       Court:                        DATE OF ARREST: 11-10-99

       Jury:                         PLACE OF ARREST: Anchorage, Alaska

CODEFENDANT: N/A

OTHER CHARGES/ACTIONS PENDING: N/A

DNA Required: Yes       Victim Notification Requested: Yes

Permanent Address/Contact: 5713 E. 6th Avenue  #B, Anchorage, AK
AKA: None
Age: 33     DOB: 4-15-66     Place of Birth: Los Angeles, CA   Sex: Male    Race: Black
Height: 5'10"        Weight: 250        Eyes: Brown        Hair: Black
Identifying Marks:  None
Citizenship: USA        Alien Reg. No.: N/A        Highest Grade Completed: GED
SSN: 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        OBSCIS No.: 154101      FBI No.: 50964JA3
Drivers Lic/ID: 6303553        Issuing State: Alaska        Expires: 4-15-00

UPDATED PRESENTENCE REPORT
RE:    TURNER, Jeffery
       3AN-S99-9792CR

## SCOPE OF REPORT:

On December 9, 1988, the defendant was convicted of two counts of Robbery in the First Degree in case 3AN-S88-1241CR. He was sentenced to five years with all suspended except for time already served and granted five years probation. A presentence report prepared at that time is appended.

On December 3, 1996, the defendant was convicted of Theft in the Second Degree and Assault in the Fourth Degree in case 3AN-S96-4756CR. He was sentenced to four years (three presumptive) with one year suspended and granted five years probation. An updated presentence report prepared at that time is appended.

The present hearing concerns the defendant's sentencing in case 3AN-S99-377CR, for which a report was ordered; it serves to update the Court regarding the defendant's status since the last reports were prepared.

## PRESENT OFFENSE:

The following was attained from the Information filed by the District Attorney's Office:

Rudy Trifunovic told Anchorage Police that, at about 1:00 p.m. on November 10, 1999, he was at the Bus Accommodation Center located at 700 West 6th Avenue in Anchorage. He stated he was using the restroom when he was grabbed from behind. When he turned to object, he saw a black male who hit him in the face with his fist several times. The man then began feeling for his wallet. The man took Trifunovic's wallet, containing a little over $20; one $10 bill, one $5 bill and six or seven $1 bills. He said he had followed the robber out of the restroom and flagged down a Bus Accommodation Center security guard. He told police that the robber wore a black jacket with a green sweater.

Police officers could see a scratch on Trifunovic's left hand and a bloody nose. His left cheekbone was bruised and swollen. The officers also found some blood on the exit doors of the Bus Accommodation Center.

When a security officer radioed for help from the other security officers, a "downtown ambassador" at the Bus Accommodation Center, Daniel Royster, overheard the transmission and with another ambassador and a security officer followed the robber. The robber tried to get away from them. The robber went into the Hill Building and, when the ambassador entered, he left. He went east into the

2

UPDATED PRESENTENCE REPORT
RE:    TURNER, Jeffery
       3AN-S99-9792CR

alley south of the Hill Building and north through a walkway to 6th Avenue. He tried to get into the Performing Arts Center on 6th Avenue; but when he could not, he walked north on G Street. He went west through the alley between 5th and 6th and south on H Street, where he entered the Inlet Inn. Royster and the other ambassador lost him in the hotel, but found him again at the corner of 5th Avenue and G Street. He went east through the alley between 4th and 5th and then north through the passage between the alley and 4th Avenue which runs along the side of the Fourth Avenue Theater. Royster was at one end of the passage and the other ambassador was at the other. As the man approached Royster at the 4th Avenue end of the passage, the man balled up his fists. Royster retreated across 4th Avenue and lost sight of the man as he retreated, but turned to see that the man was no longer on 4th Avenue. Without time for the man to have gone anywhere else, he surmised that the man had gone into the Fourth Avenue Theater. The two ambassadors remained near the Fourth Avenue Theater until the police arrived.

The ambassadors told Officers Hobson and Paiz that the suspect had entered the theater. The officers entered and found the defendant Turner seated in a stall in a restroom in the theater. He was wearing a black jacket with green lining. Officer Paiz asked Turner whether he knew what this was about and Turner nodded in the affirmative.

Victim Trifunovic was brought to the Fourth Avenue Theater for a showup and he positively identified Turner as the robber.

Officer Paiz then arrested and searched Turner. He found one $10 bill, one $5 bill and six $1 bills in an inside pocket of Turner's jacket.

DEFENDANT'S STATEMENT:

Regarding the present offense, the defendant declined to provide a verbal statement choosing to write a letter to the Court instead. If a written statement is submitted to this Officer prior to sentencing it will be forwarded to the Court for review.

During the presentence interview the defendant made the following statement. The defendant expressed interest in obtaining substance abuse treatment and stated, "I want to go and get some help. I always do well on probation supervision, I do better under a structured environment."

000061

UPDATED PRESENTENCE REᵢ ᴜRT
RE:    TURNER, Jeffery
        3AN-S99-9792CR

## VICTIM'S IMPACT STATEMENT:

The victim in this case was notified of his rights in the sentencing process via certified mail. This officer contacted Rudy Trifunovic who made the following statement. "People like the man who hit me don't deserve to live in Anchorage. This is not New York City or Chicago, small towns don't need people like that. I live on welfare, I don't have money. I was afraid after this happened but not anymore. I carry my wallet in a different place now."

Attached please find a letter that Mr. Trifunovic submitted to the District Attorney's Office regarding restitution. Mr. Trifunovic has damage to his teeth as a result of this assault and went to a dentist to try to get an estimate for the cost of repair. The dentist would not give an estimate without payment of $165. As Mr. Trifunovic receives welfare he cannot afford the cost of the estimate and therefore is unable to provide information for restitution. Contact was made with Department of Corrections dental personnel regarding approximate cost of bridgework. It appears the bill may be in excess of $5000.

## CRIMINAL HISTORY SINCE LAST REPORT:

| Date | Location | Offense | Disposition |
|------|----------|---------|-------------|
| 12-3-96 | Anchorage, AK | Theft in the Second Degree<br>Assault in the Fourth<br>96-4756 | 4 years/1 suspended,<br>5 years probation;<br>90 days consecutive |

The offense occurred on 6-25-6.

| Date | Location | Offense | Disposition |
|------|----------|---------|-------------|
| 12-23-99 | Anchorage, AK | Theft Over $50<br>99-10782 | 360 days/295 suspended,<br>$1000/$750 suspended,<br>5 years probation |

The offense occurred on 8-11-99. According to APD report #99-42419, APD Officer McCoy was dispatched to the Northern Lights Hotel to investigate a theft. Another employee stated she had been approached by the defendant asking for change for a $100 bill. She opened the register and advised the defendant she did not have change. Before she could close the drawer, the defendant reached over the counter and took $129 in cash and $100 in travelers checks. The defendant then fled the hotel in a 1993 Nissan driven by an unknown female.

000062

UPDATED PRESENTENCE REᵢ ᴖRT
RE:    TURNER, Jeffery
       3AN-S99-9792CR


Traffic:

| Date | Location | Offense | Disposition |
|------|----------|---------|-------------|
| 9-16-99 | Anchorage, AK | Exp/No Reg/Title D1019282 | $50 fine |

The offense occurred on 7-6-99.

## SUPERVISION ADJUSTMENT:

On case 3AN-S96-4756CR, the defendant was released to probation/parole supervision on January 12, 1999. The defendant was placed on random UA's and referred for a substance abuse assessment. The defendant was employed and reported to Probation as directed for the next six months. On August 17, 1999, Probation Officer Houser received notice that APD was investigating the defendant for theft. The defendant failed to report to Probation as directed on August 27, 1999 as well as September 8, 1999. A parole violation and probation violation were filed on September 21, 1999. As the defendant had absconded from probation/parole supervision, warrants were subsequently issued. The defendant was arrested on November 10, 1999 for robbery and assault and the outstanding felony warrants.

## OTHER PERTINENT INFORMATION:

With respect to personal updated information, the defendant married Aioalae Turner in 1986. The defendant and Ms. Turner have two children, a daughter age 11 and a son age 6.

The defendant was employed as a district manager for Burger King restaurants from 1984 to 1988. The defendant was subsequently incarcerated for a period of time and upon his release in 1991, he worked at Chuck E. Cheese restaurants until 1995. He also co-owned a janitorial business. The defendant returned to custody in 1996 and upon his release in 1999 obtained employment as a school bus driver, a bus driver for the Northern Lights Hotel and janitorial service worker.

The following record of disciplinary infractions was found in a search of the Department of Corrections, Offender Based State Corrections Information System (OBSCIS):

| Infraction | Date | Resolution |
|------------|------|------------|
| Contraband High/Moderate (Positive result for THC/Cannabinoids) | 3-12-00 | 10 days punitive segregation |

000063

UPDATED PRESENTENCE REPORT
RE:    TURNER, Jeffery
       3AN-S99-9792CR

## TREATMENT ISSUES:

The defendant reported he has never had any long-term mental health counseling or any psychological evaluations.

Regarding his alcohol use, the defendant stated he does not drink.

Regarding his drug use, the defendant reported his drug of choice is marijuana. He stated, "I like marijuana but amazingly it is cocaine that gets me in trouble." He started using cocaine at age 23 when he was introduced to it at an employment related party. He graduated from the Akeela House treatment program in 1988 and stayed sober for approximately seven years. He began to smoke marijuana and before long was using cocaine. He returned to the Akeela House treatment program in 1995 and was discharged into aftercare upon completing Phase 3 of the program. The defendant remained clean and sober upon his release from custody in 1999 for approximately seven months. He stated that he began smoking marijuana and progressed to cocaine. He stated, "For me, marijuana is the tie and cocaine is the blazer. Every time I get into trouble it's always when I am high. I just don't act this way when I am clean."

## EVALUATION:

Appearing before the Court on one count of Theft in the Second Degree, a Class C felony and one count of Assault in the Fourth Degree, a Class A misdemeanor, is thirty-three-year old Jeffery Turner. The defendant has previous felony convictions for two counts of Robbery and Theft in the Second Degree.

From a review of available documentation it appears the defendant has a serious cocaine addiction. By the defendant's own admission he acknowledges that his criminal offenses occur as a direct result of his drug usage. Despite long periods of incarceration, formal probation supervision and treatment programs, the defendant continues to use drugs and engage in criminal activity with no regard for the rights and property of others. It is fortunate he did not permanently injure and disfigure the victim in the present offense.

To the defendant's credit, he has previously engaged in substance abuse treatment programming and has successfully maintained extended periods of sobriety. He appears to stabilize under structured environments such as jail and treatment programs and has expressed a willingness to comply with

000064

UPDATED PRESENTENCE REPORT
RE:    TURNER, Jeffery
       3AN-S99-9792CR

substance abuse treatment programming and probation supervision services. However, his prospects for successful completion of probation and long term sobriety should be considered guarded, as he is before the Court for offenses similar to those he committed in 1996.

In fashioning a sentence in this case, the defendant's rehabilitation should be given some consideration. However, isolation, community condemnation and reaffirmation of societal norms should be primary considerations. It is also appropriate that deterrence of others be addressed.

RECOMMENDATION:

If no aggravators or mitigators are found by the Court, presumptive sentencing guidelines should be followed. It is further recommended that any release to community supervision, be it probation or parole, require the following supervision condiditons:

1.    The defendant shall not enter or remain on the premises of the Bus Accommodation Center located at 700 West 6th Avenue in Anchorage.

2.    The defendant shall have no contact with the victim in this case.

3.    The defendant shall pay restitution in an amount to be determined by the Court, payable to the Clerk of Court on a monthly payment schedule to be determined by the Court.

4.    The defendant shall not use or possess any controlled substance, to include marijuana, without a valid prescription; and submit to testing for the use of controlled substances when required by the Probation/Parole Officer.

5.    The defendant shall submit to a search of his person, personal property, residence, vehicle, or any vehicle under which he has control, for the presence of stolen property, narcotic, hallucinogenic, stimulant, depressant, amphetamine, barbiturate, or other drugs or drug paraphernalia.

6.    The defendant shall undergo a substance abuse evaluation by an appropriate treatment agency and follow through with any recommendation, to include inpatient of up to 180 days or outpatient treatment with aftercare.

7.    The defendant shall enter into and successfully complete the Male Awareness program or a similar program for anger management and provide proof of completion to the Probation/Parole Officer.

8.    The defendant shall obtain and maintain verifiable full-time employment unless engaged full time in an educational or treatment program approved by the Probation/Parole Officer

UPDATED PRESENTENCE REPORT
RE:    TURNER, Jeffery
       3AN-S99-9792CR

with proof of participation to be provided to the supervising Probation Officer.  Provide proof of income when requested by the Probation/Parole Officer.

9.    The defendant shall apply for the Permanent Fund Dividend, if eligible, for benefit during the years under the custody and supervision of the Department of Corrections; forfeit the proceeds for application toward restitution/fine.  The Department of Revenue is hereby ordered to deliver the Permanent Fund Dividend check(s) to the Clerk of the Court for this purpose.

10.   Submit to the drawing of blood and taking of fingerprints for the purpose of creating a DNA identification system pursuant to AS 44.41.025 and AS 44.41.035.

Respectfully Submitted,

Kathryn E. Luth
Probation Officer II

APPROVED:

CHRISTY FLINTOFF
PROBATION OFFICER III

CF:KL:kel
Attachments
3-31-00

March 21, 2000

RECEIVED
Department of Law

MAR 22 2000

Office of the District Attorney
Third Judicial District
Anchorage, Alaska

Kathi Jasper, Paralegal
State of Alaska Department of Law
310 K Street Suite 520
Anchorage, AK 99501-1975

Re: State v. Jeffery Turner
    Court No. 3AN-S99-9792 CR.

Dear Ms. Jasper:

To answer the questions in your letter of February 16, 2000:

1.  Mr. Jeffery Turner beat me in the face 4 or 5 times. He knocked one tooth out of my
    upper jaw, and he also broke my bottom bridge. As a result of this, I have had to go back
    to the dentist and have a new bridge built for my upper jaw for the tooth replacement, and
    also have had to have the lower bridge repaired and replaced.

2.  I lost the money in my wallet, which was $22. I also had to have the bridges replaced in
    my mouth.

3.  I would like to have Mr. Turner replace my money. I would also like him to pay for the
    dental care which resulted from his beating me up.

4.  This man is a danger to society. I am fortunate that he did not maim or kill me. The next
    person may not be so lucky. I believe he should be put in jail for 5 to 7 years.

Yours sincerely,

Rudy Trifunovic

RECEIVED

OCT - 4 2000

Department of Corrections
PSI Unit

Tape 3AN44-1888
Log Nos. 2117-3057

**3AN99-9792cr.   State of Alaska vs Jeffrey Turner 4-15-66**

April 11, 2000

Present:        Bob Linton, Assistant District Attorney
        .    Julia Moudy, Assistant Public Defender
                Kathee Luth, Probation Officer

### TRANSCRIPT OF JUDGE'S REMARKS AT SENTENCING

Before the Honorable Larry D. Card

**THE COURT:**  Before the court for sentencing is 33 year old
Jeffrey Turner.  Mr. Turner has a huge problem with addictions.
I have to say, that not all persons who are addicted though commit
this type of personal assault.   In other words, people are
involved.  Many people that are addicted do tons of shoplifting and
stealing, and theft cases and it's usually the misdemeanors.  Every
once in a while, they'll go up into the felony range because
they've had so many shopliftings within a period of time that it
requires a felony, but most of the people that I've seen that have
been involved in an addictive behavior don't necessarily become
assaultive.   For some reason, Mr. Turner, when you get certain
substances in you, it turns you mean.  I don't know what it is, and
maybe you don't know what it is.  I--I--in reading your letter it
seems like you are crying out for answers why.  I don't know why
either, and maybe we can find the answer someday.  Those types of
behaviors though, have made you dangerous to the public, and you
know, this robbery, and it was more akin to a robbery then to just

1

000026

a simple assault and a theft.  It was robbery in the 2nd degree,
a strong arm robbery.  This, you know, for basically 21, 20 bucks,
it wasn't much money, and frankly, you are yourself, as you said
in your letter, you are embarrassed about how you act when you are
under the influence.  So, the real question that has been argued
by counsel is should the court be involved in your rehabilitation
or should I leave it up to a parole board.  The same people that
are--the same people that are probation are parole officers.  There
is no difference.  I mean we--we have a fancy term for it, but it
just means you go to the parole board if you violate as opposed to
a judge.  The same type of goals can be met.  I was impressed with
the fact that you had a long period of sobriety.  You had
substantial treatment in your history, but for some reason you keep
coming back, and I know that one step is a big one.  In our
society, cocaine addiction, if it's real addiction, is kind of like
having cancer.  I know it's a one way street, and you don't have
any control over it until somebody helps you, and I think when you
make that choice to try it again, every time you try it comes out
badly.  There's no--that's a bad choice every time.  There's no
getting around it.  So, the question is do I get involved in your
future treatment.  The last time you went to court you effectively
got probably the best, I mean, you didn't get a maximum sentence
then.  I don't think the State may have been--I haven't looked at
those sentencing log or anything.  But I would be willing to be the
State was arguing for a max sentence then, and of course, the State
comes back and says well probation didn't work out, and here we are

2

again, and these are the types--these are the hardest cases for
the court because I like to believe that humankind can change, and
modify, and learn from our mistakes. But--and there's no question
I can't--even if I wanted to, if I stacked all these cases end to
end, I couldn't give you enough time to make sure you'll never get
out. This is not that kind of case. You're going to be out. The
question is what do you do with your life, you know. How do you
feel better about yourself, and how do you stay away from
controlled substances, because that is key to me for you getting
better, you know. As long as you are untreated or as long as you
choose to make the choice to have--to use the controlled
substances, you are a danger to the people around you and to
society. You may not be dangerous to your family, but you are
dangerous to people in society, strangers. And that's a scary
thought for many people, Mr. Turner. I mean you're not a small
man, and I imagine that if you got angry you'd be pretty terrifying
if you wanted to be. I know that and I think you know that. So,
you already are what we call a worst offender, meaning that there
is not much worse I could do in a case like this. This is not the
most serious theft charge because there's--we're only talking about
20 bucks. But it's the manner in which it occurred. As an
offender, you are a worst offender. I mean, you had--you had a
history of being given chances on probation, and then on parole.
You had a long--at the same time you have a long time of sobriety,
of working, working 2 and 3 jobs. I know that, so the point is
what are you going to do this time. You're 33, you're not a kid

3

any more, you're not a youthful offender. The times we've in court before I'm sure other judges may have said the same, rehabilitation was most important when you were a youngster, when the first robbery occurred. Even when I saw you not too long ago, I considered rehabilitation and gave you a chance at probation, but I don't consider throwing a person away if parole--if the parole board is involved as opposed to the court. The court has many, many, many, if not hundreds, probably hundred if not thousands of cases, not me personally, but collectively we have that many we have to monitor. So, the question is shall I consider your rehabilitation to go through the parole board or the court by probation. I don't think you have a good chance on probation, but you may. Your record doesn't show it. You haven't maintained it. I'm going to make a lot of recommendations regarding your future because I think that you should be given an opportunity to do better, but community condemnation has got to be my number one Chaney criteria. I just don't think there is any other way of getting around it. I think I've gone as far as I can go and realistically feel, as a member of this community, that I've given you due for what's happened in your life. You certainly have had things happen, but there are things that you've done to yourself, and I think your letter says that. I think you made a very--wrote a very astute letter, and I hope if you follow this you're not going to come back to court when this is all over. I think you are going to be the kind of citizen you want to be. Cause I believe if you seek the treatment it's there for you, and I think your

4

parole officers, probation officers are going to make sure that you get a chance to get that, but it's got to be something you want to do again, and it's not easy, and I know it's not. But community condemnation is first as far as I'm concerned, and I want to deter you. I want you to have some time to think about it, and others similarly situated. I think the period of isolation I'm going to give you will address that. I don't put your rehabilitation at the bottom, but I put it right behind community condemnation and deterrence. I hope--I want you to continue to think as you have in this letter. I hope you keep a copy of your letter and Ms Moudy I'll make sure he get's that if you want it so he can read it over again.

MS. MOUDY: I made him a copy.

THE COURT: It's a very good letter. It's well written and he thought it out. But in 99-9792 based on what I've seen I've found you a worst offender. I think you are a dangerous offender as you continue in your untreated state as long as you go into relapse then you've got to go into relapse prevention. It's going to be there for you and I think it's available for you, but you've got to be willing to do it, and you can't just turn back at any time. You can't make a one step back because you know what happens every time you take a step back. I don't want to see you in court. I want you to do better. I want you to feel better about yourself and your life, and I hope to give you those tools. But I can't ignore the fact that people continue to get victimized. It's not just a theft offense. If we had just a theft offense, I think I'd

5

000030

have a lot more leeway. I know I would in fact. But we have people getting injured, and so, based upon my findings, I'm going to sentence you in the 9792 case count I for the assault, I'm sorry, for the theft in the second degree, a class C felony, I'm going to give you the five years maximum sentence in that case, three of which are presumptive, the two are not presumptive. So, I'll talk about the rest of it in a moment. In count II, I'm going to make Count II concurrent, it was, I hate to say it, but it's true, it was only a 20 dollar theft. It wasn't a big theft case, and it happened at the same transaction or occurrence, and yes, there's a different societal interest. But there's no need for me to make it consecutive. I feel 5 years will properly address the issues in that case. I'm going to make recommendations in this flat time sentence in accordance with the request from the probation officer. I'm going to incorporate them, the recommendations on page 7, folks if you want to look at that. I'm going to incorporate these as if I have read each and every one of them, 1,2. I'm going to delete 3 because the state has not requested restitution. Is that correct, Mr. Linton?

MR. LINTON: Correct.

THE COURT: All right. Deleting 3 and renumbering those recommending 3--recommending 4 as number 3 and so forth, renumbering them, and these recommendations will go to the parole board in this case and that includes an opportunity for him to have further treatment and it says in patient for up to 180 days, and I think I'm going to recommend--I'm going to recommend that he has

6

000031

in patient for up to 360 days. I think a year sometimes would be appropriate in a case like Mr. Turner's. He's had long term substance abuse issues and he has relapsed before, so I'm--the recommendation will be that he have up to 360 days. But it's only a recommendation. It's not going to be in the control of the court. Number 6, of course, and 8 with the bottom about full time employment. It's never been a problem with him working it appears, and number 9 is deleted because there is no restitution, and number 10 is required by law. It will be renumbered number 9 that he submit to drawing of blood and taking of fingerprints, because that's required by law as a conviction issue, and if I had put him on probation it would have been required anyway. Count II, as I indicated, is concurrent even though it's a different societal interest. I don't see there is any reason to exceed the maximum sentence for the most serious offense. I'm not making a Munchler (ph) finding, although I think I could justify it if I did. I don't deem it necessary. I don't think that additional year, if I were to give it, and I would but for the fact that he has--I'm going to address the other part of this case in a moment, other time which he has to deal with. But Mr. Turner is either going to make it or not in the 5 year presumptive term, three year presumptive term and two year non-presumptive. So, I know he's going to be eligible for release after serving two years of those--that time. He'll get credit for time served in this case, and I know that he's eligible for furlough release on discretionary parole after he serves one quarter of the balance of time left

7

000032

after the parole--the presumptive term.  So, I recognize that Mr. Turner could be out on the street in as little as two and half years or less, if he gets credit for time served, maybe even less time.  So, I would hope that he would take the opportunity to follow the parole officer's care and concern because they are the same people that are probation officers, and do what he can to address his personal issues so he can be a better person in this community, and I think that's in his best interest.  I have to advise Mr. Turner he has a right to appeal his sentence in this case.  If he cannot afford one--an attorney, one will be appointed to assist him.  By appealing his sentence he'll be waiving double jeopardy, in that this court may be required or allowed on revision of the sentence not only to somehow reduce the sentence but also to increase it.  So, Ms. Moudy, please discuss that with Mr. Turner.

**MS. MOUDY:**  I will.

**THE COURT:**  And any appeal will have to be done within 30 days of the court's distribution of it's judgment.  We'll be doing fingerprinting on the record in this case.  We'll wait until the end, officer, if you will, and a surcharge of $100 is required. We can wait until the end.  I'll just--cause I have another case I have to deal with.

**JUDICIAL SERVICES OFFICER:**  Okay.

**THE COURT:**  Bail or bond is exonerated.  Turning now to the original case that I was involved in in 96.  It's 96-4756 on a petition.  I took judicial notice on March 6th at Ms. Bahr's

8

000023

request and I have--there is approximately 1 year left, and when the court does a probation revocation proceedings I'm required-- this is a disposition actually, I'm required to consider all the circumstances including the original charge or charges, the defendant's history, and his intervening conduct. Having just sentenced Mr. Turner on what I consider a case--actually as if not more serious then the one that I was originally sentencing him on. I don't think I have any choice but to revoke his probation and impose the balance of the time that was originally ordered in that case. That shall be, of course, consecutive and I feel that in spite of the State's argument, I have an option of imposing that time because it was already sentenced concurrent with the parole board's balance--issuing a balance of time to serve in the parole case, the original sentence. I've declined to do so. I shall allow it to remain in it's present form which is consecutive. I do hope that Mr. Turner has a chance to start on his treatment, that he gets--when he's eligible, if he is eligible--if eligible and I would make that recommendation get half way house treatment, get out and start getting back into society, and in effect become the kind of citizen I think he really wants to be, if he can get rid of those additions. But he certainly needs the treatment and he's got to do all the hard work. Nobody can do it for him, and it sounds like he really wants it, and so I recognize that it's very, very, very difficult, but he's going to have to do that. So, that's the court's order. Bail or bond will be exonerated and 4756, I looked at the Chaney criteria and considered community

9

condemnation now to be the most important as opposed to rehabilitation, and rehabilitation is no longer the first. I do hope to deter Mr. Turner, which is second most important. Rehabilitation at the bottom, of course and others similarly situated, and his isolation which is the balance of time, which he's probably already served now, is the most critical for this court. So, I have to advise him he has the right to petition for review of the court's disposition in 4756. If he does, he may be waiving double jeopardy by doing so, and if the court may be allowed to someway modify the disposition in other ways that he has not anticipated. Not only to his worst but also to the betterment, if he wants to do that. Any petition for review has to be done within 10 days of the court's distribution of it's judgment in this case. Ms. Moudy, please talk to him about that, and, of course, bail or bond is exonerated. So, we'll need to do fingerprinting on the record in the other case--99-9792,and does the State have any other additional requests for findings in that case?

    **MR. LINTON:** No, your honor.

    **THE COURT:** Ms. Moudy, do you have any additional requests?

    **MS. MOUDY:** No. judge.

        (fingerprinting in progress)

    **THE COURT:** I am going to recommend that Mr. Turner go, if he is eligible, and I don't know if he'll be able to do it, but if he's eligible, that he be considered for halfway house treatment. I do want him to transition back into society. He will be in society whether we like it or not, and, frankly, I'd like to see

000025

him back in and crime free, and so he is going to have to beat the addictions first.  So, that'll be my recommendation.

(court confers with clerk)

**JUDICIAL SERVICES OFFICER:**  Your honor, the defendant's been fingerprinted.

**THE COURT:**  Do they appear to be legible?

**JUDICIAL SERVICES OFFICER:**  Yes.

**THE COURT:**    All right, thank you.  I'm going to make that recommendation on the 99 case which is the one I'm still on.  I'm going to make that recommendation as to the--to the parole board, 99-9792.  That if--if he is in compliance with the Department regs and it would be in the best interests of Mr. Turner and society that he be allowed to proceed to halfway house.  Because I want to make sure he does transition, and if he's serious about getting better, then we'll have the benefit of that, if he doesn't he won't have that opportunity.  Thank you Mr. Linton.  Ms. Luth, thank you very much for coming.

**MS. LUTH:**  I just have one question?

**THE COURT:**  Yes, ma'am.

**MS. LUTH:**  On Count II on the 99 case is that 1?

**THE COURT:**  Yes, concurrent, one year concurrent.

**MS. LUTH:**  Okay, thank you.

**THE COURT:**  Ms. Moudy, do you have any questions?

**MS. MOUDY:**  No. judge.

**THE COURT:**  All right, thank you.  Good luck, Mr. Turner.

**THE DEFENDANT:**  Uhuh.

11

**THE COURT:** Off record.

* * * * * * * * * * *

This is to certify that on this 4th day of October, 2000, copies of the foregoing were caused to be mailed or delivered to: the District Attorney, the Public Defender, the Department of Corrections, and the Parole Board.

_____
Deputy Clerk

12

000037

DOC

April 2nd

well Judge Card to be.

Frank Sir I've made some terrib-
le choices in my life, which has
caused a great deal of pain. Suf-
fering for my victims & family alike.
Judge Card for this I'm guilty, I've
really made a terrible mess out of
my life Judge Card & I truly belie-
ve I need who desire some help. I'm
Presently in the process of getting the
ball rolling to start rebuilding the h-
elp I so desperatly desire. This will
also be the start of a long Rebuild-
ing process for my victims who family
members alike whom my drug induced
Actions have affected & caused so much
Pain. Judge Card all fault lost Resp-
rting me, Please believe I truly w-
ant a life I can feel good about and
be proud of, you know sir? my w-
indow to Recovery is getting smaller
however it's not closed yet Judge C-

And, Please Please believe that..
believe upon my release from Jail
Jail. or that I should have went t-
a treatment Program, However H S-
-es clean & Sober and worked hard
holding down 2-3 jobs for 7 month
(Jan-Aug) @ Bus Driver Ditel/@ Jailton
Nighttime Continues with the Alaska S-
@
He Troopers main headquarters on Tol-
o Parttime Airport Driver for The N-
thern lights Hotel. for 7 months I-
AYED focused; clean and sober while
making all P.O. Appt's, on other will
ower due to my lack of tools: 12:
P Program- A.A. meetings and most .
All Honesty; Yes Sir Judge Card I
truly lacked honesty which lead to
beginning of the end for my Sobriety.
Freedom as I knew it. My lack of
hasty lead to my relapse & theft Fi
my Parttime Job at Northern lights
tel. I was fired; cited by the au-
rage Police Dept. to appear in cour-

000047

to address the pending charge, At that point I was lost; I distraught Seperated from family; Peers once again due to my usage of drugs. Judge Card I left my home on foot walking from my house to the tudor Police station to turn myself in; Get the help I needed to stop my destructive cycle. However I once again ran into a road block the police wouldn't take me into custody due to no warrant being issued at that point in time, I pleaded several times with the officer in charge to please either arrest me or contact the officer who filled out the original paperwork so he could contact him and confirm that a crime had in fact took place. However he was off duty and they couldn't or wouldn't locate him to confirm my story. At that point I let the officer's know that I was on parole and gave th-

em my parole officers name to call. Once again confirm my Information so I could be taken into custody; once again no such luck. My parole officer was off on vacation, So I wondered around for a while and I led to get into Aleneta House, however they had a waiting list and no bed space! As you can see I did try so very hard to stop my destructive cycle, I truly did. Judge Card. I'm truly sorry and ashamed of my actions on Nov. 10 at the bus depot. Judge Card my victim truly didn't deserve what I put him through God knows I was wrong.

Judge Card I Ask Only for the opportunity to be a Man and stand accountable for my actions, No favors or handout. Just the opportunity to Repair, Rebuild my life. I would like for y-

to please considered running my
1 year suspended time with my par-
ole violation I'm currently serving
spe-same case. Also on the new
case you could truly bury me, howe-
ver the mandatory 3 years with 2
years suspended I believe would
be appropriate and allow me to get
some treatment at the end of my J-
ail time which address both my debt
to my victim; community I/we also
it would allow me to work on my
addiction to better myself! Once ag-
ain Judge Card I'm truly sorry Ab-
out my mistakes on and to the Wald
would IPLE to make my amends to
my victim; community both by re-
grouping and getting some help. In
the past I've just served time-
time-time with no help, well J-
udge Card I believe this time I'm
a change to my life W.S.A.P.!
H also believe you don't will be

A big part of this change spe
based upon your decision today
to this court of law. For the la
of God help me help myself; I+
ly need someone to believe pu+
and allow me to seek help; Re
my debt to the victim of this
time and the community also, s
one day I can be proud of us
I am today-Tomorrow- always

Jeffery Tum—

000040